In the

# United States Court of Appeals

### For the Seventh Circuit

No. 23-3286

LANLAN LI,

*Plaintiff-Appellant,*

*v.*

FRESENIUS KABI USA, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-07110 — **Mary M. Rowland**, *Judge.*

ARGUED MAY 30, 2024 — DECIDED AUGUST 5, 2024

Before ST. EVE, KIRSCH, and KOLAR, *Circuit Judges.*

KOLAR, *Circuit Judge.* In 2019, Plaintiff-Appellant Lanlan Li developed back pain and eye strain. These conditions required her to take various types of leave from her position as a scientist at Defendant-Appellee Fresenius Kabi USA, LLC, a pharmaceutical company. However, her back injury persisted past the expiration of her leave and she could not return to her position with or without work restrictions. As a result, Fresenius terminated her employment. Li subsequently sued

the company for discrimination and now appeals from a grant of summary judgment and the dismissal of her national origin and age discrimination claims for failure to exhaust her administrative remedies. Because Li did not raise a dispute of material fact as to any of her claims, summary judgment was appropriate. Accordingly, we affirm.

## I.      Background

Lanlan Li is a 51-year-old woman of Chinese descent. In 2016, Li began working on a project for regulatory approval of a drug. This project involved conducting cell-based assay experiments and drafting a report for the Food and Drug Administration. Because Fresenius intended to submit the report to a regulatory agency, Li needed to adhere to certain standards and protocols in her testing and reporting. Li—then a senior scientist—hoped for a promotion soon, and her supervisor told her that a successful report would help convince leadership to promote her.

By all accounts, Li worked many hours, including overtime, on the report. She submitted the report on May 29, 2019—nearly a month before the deadline—and took a vacation until June 24, 2019. While she was on vacation, Fresenius awarded her a $1,000 bonus in appreciation of her hard work. When supervisors reviewed the report, though, they realized that it did not meet industry standards and Fresenius had to significantly modify the report before submitting it. Thereafter, Li's supervisor did not recommend her for promotion.

On July 24, 2019, Li began experiencing back pain and eye strain. She submitted physician-recommended work restrictions to Fresenius's human resources department, including a recommendation that she refrain from sitting for seven

to eight hours a day. Following the initial submission, Li provided an additional recommendation that she abstain from bench work—which requires sitting and bending over—until her back pain improved. Fresenius told Li that it could accommodate a restriction of no bench work, but that it could not guarantee eight hours of work each day. Accordingly, Fresenius helped Li apply for short-term disability benefits and protected unpaid medical leave. Because Fresenius did not have enough work for her absent bench work, Li worked part-time after receiving short-term disability benefits.

In November 2019, Li filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging disability discrimination and retaliation. She later filed charges alleging age and national origin discrimination. She also submitted these claims to the Illinois Department of Human Rights, which acknowledged receipt of the communication on December 26, 2019.

By March 2020, Li had nearly exhausted her short-term disability leave, leading her benefits provider to reach out about transitioning to long-term disability. Fresenius also told Li that she needed to return to her position, which required bench work, by April 23, 2020, and that she would be terminated if she was unable to do so. Fresenius granted Li an extension to April 30, 2020, so she could follow up with medical providers. On April 30, 2020—the day Li was required to return to work—the benefits provider denied her application for long-term disability. Fresenius again allowed Li to extend her leave until May 21, 2020. By May 26, 2020, Li remained unable to return to work with or without restrictions, and Fresenius terminated her employment.

On December 1, 2020, Li filed suit against Fresenius, asserting claims of disability discrimination, retaliation, and failure to accommodate in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq.; national origin discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000(e) et seq.; and the Illinois Human Rights Act, and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. In late 2022, Fresenius moved for summary judgment on all claims, both on the merits and on exhaustion grounds.

The district court granted the motion, finding that Li had failed to exhaust her administrative remedies for her age and national origin claims and holding that her disability and retaliation claims failed on the merits. In finding that Li had not exhausted some of her claims, the district judge noted that Li had not included a right-to-sue letter from either the Equal Employment Opportunity Commission or the Illinois Department of Human Rights. The district court accordingly entered judgment in favor of Fresenius on Li's disability claims and dismissed her age and national origin claims without prejudice.

Li subsequently moved for reconsideration, asking the court to rethink its finding of failure to exhaust her national origin claim (but not her age discrimination claim) and to reverse its grant of summary judgment on her disability claims. In support of her motion, Li attached the right-to-sue letters for her various claims, including her national origin and age claims. The district court denied the motion. First, it explained that the right-to-sue letters should have been included in the original summary judgment record. Next, it held that Li had

failed to demonstrate that she was entitled to reconsideration under the governing legal standard. Following the denial of reconsideration, Li appealed.

## II.    Analysis

We review a district court's grant of summary judgment de novo, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Bruno v. Wells-Armstrong*, 93 F.4th 1049, 1053 (7th Cir. 2024). We may affirm on "any ground supported by the record as long as it was adequately addressed in the district court and the losing party had an opportunity to contest it." *EEOC v. Wal-Mart Stores E., LP*, 46 F.4th 587, 593 (7th Cir. 2022) (citation omitted).

One way for a plaintiff prove discrimination is through the burden-shifting framework in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which "a plaintiff must show that he is a member of a protected class, who was meeting the defendant's legitimate expectations, that he suffered an adverse employment action, and that similarly situated employees who were not members of his protected class were treated more favorably." *Singmuongthong v. Bowen*, 77 F.4th 503, 507 (7th Cir. 2023) (citing *Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020)). Once those elements are met, the defendant bears the burden to "set forth a legitimate, nondiscriminatory reason for the adverse employment action." *Id*. at 507–08 (internal citation omitted). If the defendant meets his burden, the plaintiff must submit evidence that the employer's explanation is pretextual. *Id*. at 508.

This method is one way—but not necessarily the only way—to evaluate a discrimination claim. "Although there are many tests and rubrics for viewing discrimination claims, it is

important to recall that, at the end of the day, they are all merely convenient ways to organize our thoughts as we answer the only question that matters: when looking at the evidence as a whole, whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters. Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

### A. Disability Claims

Li claims that Fresenius discriminated against her based on her disability at least two times, first when it did not promote her and again when it terminated her employment. As to the latter claim, at bottom, Li believes that her termination was a result of Fresenius's initial failure to accommodate her (i.e., by failing to promote her).

The Americans with Disabilities Act proscribes discrimination against a "*qualified individual* on the basis of disability." 42 U.S.C. § 12112(a) (emphasis added). A failure to accommodate claim under the Act relies in part on the same statutory language and therefore also requires that an individual is "qualified." *See E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005); 42 U.S.C. § 12112(b)(5)(A).

There is no dispute that Li had a disability. Instead, the parties dispute, and we must answer, whether she was "qualified" under the Act. This means Li must be able to "perform the essential functions" of her job "with or without reasonable accommodation."[1] *McAllister v. Innovation Ventures, LLC*, 983

---

[1] Because disability discrimination claims under the Illinois Human Rights Act are analyzed under a framework that is "practically

F.3d 963, 967 (7th Cir. 2020) (quoting 42 U.S.C. § 1211(8)). "An inability to do the job's essential tasks means that one is not 'qualified'; it does not mean that the employer must excuse the inability." *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003). The employee "bears the initial burden of establishing that she was a qualified individual who could perform the essential functions of her position," after which she "must show that her employer was aware of her disability but failed to afford her a reasonable accommodation." *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 493 (7th Cir. 2014) (citations omitted).

Thus, the determination of whether Li was a qualified individual depends on whether she could perform the essential functions of her job after the onset of her disability with or without a reasonable accommodation. Li could not perform bench work, and bench work was an essential function of her job. So, we agree with the district court that Li was not a qualified individual within the meaning of the Act.

Li does not dispute that she could not perform bench work because of her disability. Instead, she disputes that bench work—as opposed to "lab work"—was an essential function of her job. But the record amply demonstrates that it was. Fresenius's employees testified that bench work was a required function of Li's position and the internal job description for senior scientist listed bench work as an essential function. We recognize that the employer's judgment of whether a job function is essential is not necessarily controlling, but

---

indistinguishable" from the federal disability discrimination analysis, we focus on the federal disability claims. *Tate v. Dart*, 51 F.4th 789, 794 (7th Cir. 2022).

here, Li presented no admissible evidence to raise a genuine dispute of material fact as to any of Fresenius's assertions. *Miller v. Ill. Dept. of Transp.*, 643 F.3d 190, 197–98 (7th Cir. 2011).

Li insists that she has raised a material dispute of fact, arguing that her response to Fresenius's Rule 56.1 statement contradicts Fresenius's evidence regarding whether bench work was an essential job function. But a response to a Rule 56.1 statement is not, on its own, admissible evidence, and Li cites no additional evidence. *See* Fed. R. Civ. P. 56(c)(1) (discussing how a party asserting that a fact cannot be or is genuinely disputed must cite to record materials or show that the materials cited do not establish a dispute). It is not our job— nor that of the district court—to "scour the record in search of a genuine issue of triable fact." *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 285 (7th Cir. 1997).

Accordingly, the record contains no dispute of material fact on this point: Li could not perform an essential function of her job, and therefore was not a qualified individual under the Act. Her claims under the Act, both the discrimination and failure to accommodate claim, therefore fail.

Even if Li was a qualified individual (and she is not), her claims would also fail for additional reasons. For instance, Li argues that Fresenius's decision not to promote her demonstrates disability discrimination because, had she been promoted, she would not have been required to perform any bench work. But Li makes this argument by pointing to the fact that the individual that Fresenius promoted instead of her had the same disability, back pain, which itself calls into question her discrimination claim. *See Conley v. Village of Bedford Park*, 215 F.3d 703, 711 (7th Cir. 2000) (to survive summary

judgment on a failure to promote claim, a plaintiff must present direct or indirect evidence linking "the lack of promotion with the disability"). And in any event, Fresenius presented uncontradicted evidence that it did not promote Li because of her poor performance. Furthermore, this poor performance occurred prior to the onset of Li's disability, so attempts to argue that these work problems were pretext for discrimination fall flat. Thus, a reasonable jury could not find that Li's non-promotion was discriminatory, even if she was a qualified individual.

As best we can tell, Li's remaining argument on her disability claims boils down to the assertion that she should have been accommodated through a promotion, and that her failure to be promoted led to her termination. But a promotion is not a reasonable accommodation. *Malabarba v. Chicago Trib. Co.*, 149 F.3d 690, 700 (7th Cir. 1998). Indeed, we have previously stated that "the Act does not [] require employers to promote employees to accommodate them." *Brown v. Milwaukee Bd. of Sch. Directors*, 855 F.3d 818, 820–21 (7th Cir. 2017). And, in any event, the record demonstrates that Fresenius provided accommodations for Li's disability in her position as senior scientist for as long as it was able. It allowed her to abstain from bench work and permitted her to take additional breaks, not work overtime, and abstain from lifting items over five pounds. Fresenius continued to allow Li to work part-time for seven months before it requested that she return to her full duties, including bench work, an essential function of her job. While Li might have wanted different accommodations (including the promotion, or permanent relief from bench work), "[a]n employer is not obligated to provide an employee the accommodation he requests or prefers, the

employer need only provide some reasonable accommodation." *Malabarba*, 149 F.3d at 699.

In sum, the district court did not err in granting summary judgment to Fresenius on all of Li's disability claims.

### B. Age Discrimination

Li also claims that Fresenius discriminated against her based on her age when it did not promote her and instead promoted a younger employee. We disagree.

The Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., proscribes discrimination with "respect to [] compensation, terms, conditions, or privileges of employment" based on age. 29 U.S.C. § 623(a)(1). Li needed to present evidence that she was both qualified for the promotion and that the promotion "was granted to a person outside the protected class who is similarly or less qualified than [her]." *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 833 (7th Cir. 2005). At bottom, Li "must prove that age was the 'but for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

Li did not present evidence that could establish a dispute of material fact as to whether she was qualified for the promotion and whether the promoted individual was similarly situated. Fresenius offered evidence that Li's work, specifically on the drug-approval report, was unsatisfactory. This alone could be disqualifying for the promotion. But to succeed on her claim, Li must "demonstrate that [the promoted individual] occupied the same job level and engaged in similar past misconduct, but as a result of this misconduct … was treated differently (*i.e.*, more favorably) for no legitimate reason." *Jordan*, 396 F.3d at 834. And Li only presented evidence

demonstrating that the promoted individual was under the age of 40 and had less work experience than her. As discussed above, Li did not rebut Fresenius's evidence of unsatisfactory work product. Nor did she present any evidence indicating the promoted individual had a similar history of poor work product. Accordingly, Li failed to make out a prima facie case of age discrimination, and summary judgment was appropriate on this claim.[2] *See Jordan*, 396 F.3d at 834.

### C. Retaliation Claims

Li also challenges the district court's grant of summary judgment to Fresenius on her retaliation claim. If we believe Li's account, she was terminated in retaliation for filing charges with the Equal Employment Opportunity Commission. Li, however, has not presented sufficient evidence to establish a dispute of material fact as to her retaliation claim.

An employee bringing a retaliation claim against an employer must present evidence of "(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Abebe v. Health*

---

[2] Because exhaustion is not required for age discrimination claims, Li's claim should have been dismissed with prejudice. The district court dismissed Li's age discrimination claim without prejudice for failure to exhaust her administrative remedies. An age discrimination claim, however, does not require administrative exhaustion, and a plaintiff need not receive a right-to-sue letter before filing in federal court. *Compare* 29 U.S.C. § 626 ("No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed…") *with* 42 U.S.C. § 2000e-5(f)(1) (indicating that the Commission "shall so notify the person aggrieved" if the charge is dismissed or the Commission has not filed a civil action within 180 days, and "within ninety days *after the giving of such notice* a civil action may be brought").

*& Hosp. Corp. of Marion County*, 35 F.4th 601, 607 (7th Cir. 2022) (quotation omitted). The first prong is clearly met, as filing charges of discrimination qualifies as a protected activity. *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 658 (7th Cir. 2012). So, too, is the second: Li was terminated after filing the charge. Li falters at the third, though, because she failed to establish any causal nexus between the filing of the charge and her termination.

To survive summary judgment, Li must show that "the record contain[s] sufficient evidence for a reasonable fact-finder to conclude that retaliatory motive caused the materially adverse action." *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022). But Li presented no evidence evincing any retaliatory intent on the part of Fresenius other than the temporal proximity between her filing of the charges and her termination. Li's complaints to the Commission started in November 2019, and Fresenius terminated her a few months later in May 2020. While temporal proximity can sometimes be sufficient to raise an inference of retaliation, the "general rule" is that "temporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter" without additional facts. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). Here, the only evidence Li put forth to demonstrate retaliatory intent is a loose temporal proximity between the filing of a Commission charge and her termination. This is not enough, and the district court properly granted summary judgment in favor of Fresenius on Li's retaliation claim.[3]

---

[3] And, to the extent that Li argues that she was retaliated against for requesting accommodations, it is undisputed that her work quality issues

### D. National Origin Claims

Finally, Li asserts that she properly exhausted her national origin discrimination claim. But Li's claim fails regardless of whether she exhausted because she presented no evidence from which a jury could conclude that Fresenius discriminated against her on this basis.[4]

Li contends that the promotion of another individual who was outside of her protected class indicates that Fresenius engaged in national origin discrimination. *See Naficy v. Ill. Dept. of Hum. Servs.*, 697 F.3d 504, 511 (7th Cir. 2012) (one element of a prima facie case is that "similarly situated employees outside of the protected class were treated more favorably"). But Li did not present any evidence indicating that the promoted

---

preceded any request for an accommodation. It is obvious that retaliation cannot predate any protected action by an employee. *See, e.g.*, *Smith*, 674 F.3d at 658 (no retaliation claim possible when termination occurred before protected activity).

[4] According to Li, she submitted a charge to the Commission, and this was sufficient to exhaust her remedies. But a plaintiff exhausts her remedies "by filing charges with the EEOC *and receiving a right to sue letter*." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (emphasis added). Li did not supply a right-to-sue letter for her national origin claims and filing a charge only starts the administrative process: it does not end (or exhaust) it. *See Bibbs v. Sheriff of Cook County*, 618 Fed. App'x 847, 852 n.1 (7th Cir. 2014); *Schnelbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 128–29 (7th Cir. 1989) ("[F]iling an EEOC charge and receiving a right-to-sue letter is still a prerequisite to suit. … [C]laimants are not permitted to bypass the administrative process."). Accordingly, the district court properly found that Li did not exhaust the claim. *See Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009) (dismissal without prejudice appropriate when exhaustion is not met).

individual was like her in all material respects. The crux of Li's national origin discrimination claim is that the individual Fresenius promoted instead of her is of Indian descent, while Li is of Chinese descent. But "[a] similarly situated employee is one who is comparable to plaintiff in all *material* respects[.]" *Perez v. Illinois*, 488 F.3d 773, 776 (7th Cir. 2007) (emphasis original) (internal quotation marks omitted). As discussed above, Li presented no evidence that the promoted individual had a similar history of poor work performance—a material attribute. Accordingly, while the individual Li identified is outside of her protected class, she is not similarly situated. Thus, because Li identifies no other similarly situated individuals, her national origin discrimination claim must fail.[5] Summary judgment is therefore appropriate.

### III.    Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[5] Fresenius suggests that we should dismiss the appeal for failure to abide by the procedural rules, including Circuit Rule 30 and Federal Rule of Appellate Procedure 28. Because we resolve this case on the merits, we need not address this alleged failure.